## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY CORTESE, JAMES KEARNEY, DANIEL JULIO, JOHN SICILIANO, JEFFREY BROOKS and MARK LEYBLE, individually and on behalf of others similarly-situated,<br><br>                    *Plaintiffs*,<br><br>          -vs-<br><br>SKANSKA KOCH, INC., KIEWIT INFRASTRUCTURE CO., and SKANSKA KOCH-KIEWIT JV<br><br>                    *Defendants*. | Civil Action No. 1:20-cv-01632 |

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS SKANSKA KOCH, INC. AND SKANSKA KOCH-KIEWIT JV'S FRCP 12(b)(6) MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

---

PECKAR & ABRAMSON, P.C.
1325 Avenue of the Americas
10th Floor
New York, NY 10019
(212) 382-0909
*Attorneys for Defendants Skanska
Koch, Inc. and Skanska Koch-Kiewit JV, Inc.*

<u>On the Brief:</u>

Gregory R. Begg, Esq.
Michael J. P. Schewe, Esq.
Shannon D. Azzaro, Esq.

4412288v1

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ......................................................................................... 1

SUMMARY OF CLAIMS AND ALLEGATIONS. .................................................... 2

STANDARD FOR A MOTION TO DISMISS UNDER FRCP 12(b)(6) .................... 7

LEGAL ARGUMENT......................................................................................................... 8

POINT I - PLAINTIFFS' WAGE AND OVERTIME CLAIMS ASSERTED IN COUNTS
ONE THROUGH FIVE ARE PREEMPTED BY THE NLRA UNDER *GARMON* .................... 8

POINT II - PLAINTIFFS FAIL TO ADEQUATELY PLEAD A CLAIM FOR
OVERTIME  VIOLATIONS UNDER NYLL AND FLSA (COUNTS ONE AND TWO) ........ 12

POINT III - PLAINTIFFS' FIRST CLAIM FOR RELIEF FOR OVERTIME PURSUANT
TO THE FLSA IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS ............ 13

A.      Plaintiffs' Claims are Barred, In Whole or In Part, by the Statute of Limitations
        under the FLSA......................................................................................................... 14

        i.      Plaintiff Cortese's Claims are Wholly Barred by the Statute of Limitations ....... 15
        ii.     Plaintiff Julio's Claims are Wholly Barred by the Statute of Limitations............ 15
        iii.    Plaintiff Brooks' Claims are Partially Barred by the Statute of Limitations ........ 15
        iv.     Plaintiff Leyble's Claims are Barred, in Whole or in Part, by the Statute of
                Limitations ......................................................................................................... 15
        v.      Plaintiff Kearney's Claims are Partially Barred by the Statute of Limitations
                .............................................................................................................................. 16
        vi.     Plaintiff  Siciliano's  Claims  are  Partially  Barred  by  the  Statute  of
                Limitations ......................................................................................................... 16

POINT IV - COUNTS SIX AND SEVEN OF THE TAC ARE PREEMPTED BY THE
LMRA .............................................................................................................................. 16

POINT V - PLAINTIFFS' NYLL ARTICLE 6 CLAIMS (FOURTH AND SEVENTH
CLAIM FOR RELIEF) MUST BE DISMISSED AS A MATTER OF LAW BECAUSE
PLAINTIFFS DO NOT SUFFICIENTLY ALLEGE A VIOLATION OF LAW........................ 23

CONCLUSION.................................................................................................................. 25

4412288v1

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Air Transp. Ass'n of Am. v. Prof'l Air Traffic Controllers Org.,
  667 F.2d 316 (2d Cir.1981)..................................................................................11

Allis-Chalmers Corp. v. Lueck,
  471 U.S. 202 (1985).................................................................................19, 21

Antol v. Esposto,
  100 F.3d 1111 (3d Cir. 1996).............................................................................19

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)...........................................................................................7, 8

Avedisian v. Quinnipiac Univ.,
  387 F. App'x 59 (2d Cir. 2010) ....................................................................19, 20

Baker v. Kingsley,
  387 F.3d 649 (7th Cir. 2004) .............................................................................19

Barbieri v. United Techs. Corp.,
  255 Conn. 708 (2001) ........................................................................................11

Bay Ridge Operating Co. v. Aaron,
  334 U.S. 446, 68 S. Ct. 1186, 92 L. Ed. 1502 (1948)............................................12

Bldg. Trades Employers' Educ. Ass'n v. McGowan,
  No. 98 CIV. 4998 (MBM), 2001 WL 682740 (S.D.N.Y. June 18, 2001), rev'd
  on other grounds, 311 F.3d 501 (2d Cir. 2002) ....................................................10

Blue Tee Corp. v. Koehring Co.,
  754 F. Supp. 26 (S.D.N.Y. 1990), judgment clarified, 763 F. Supp. 754
  (S.D.N.Y. 1991)..................................................................................................21

Bonn-Wittingham v. Project OHR, Inc.,
  792 F. App'x 71 (2d Cir. 2019) ..........................................................................13

Brown v. Sterling Aluminum Prod. Corp.,
  365 F.2d 651 (8th Cir. 1966) ..............................................................................20

Cortese v. Skanska USA, Inc.,
  No. 19-CV-11189(JSR), 2020 WL 2748438 (S.D.N.Y. May 26, 2020) ..................9

D'Arpa v. Runway Towing Corp.,
  No. 12-CV-1120, 2013 WL 3010810 (E.D.N.Y. June 18, 2013) ...........................13

i

DelCostello v. Int'l Bhd. of Teamsters,
462 U.S. 151 (1983)................................................................................................22, 23

Doyle v. United Airlines, Inc.,
914 F. Supp. 2d 325 (E.D.N.Y. 2012) ...................................................................23

Ethelberth v. Choice Sec. Co.,
91 F. Supp. 3d 339 (E.D.N.Y. 2015) .....................................................................12

Franchise Tax Bd. v. Constr. Laborers Vacation Trust,
463 U.S. 1 (1983) ..................................................................................................19

Goodman v. Port Auth. of New York & New Jersey,
850 F. Supp. 2d 363 (S.D.N.Y. 2012)....................................................................9

Grochowski v. Phoenix Const
., 318 F.3d 80 (2d Cir. 2003)...................................................................................12

Heredia v. Americare, Inc.,
No. 17 CIV. 06219 (RWL), 2020 WL 3961618 (S.D.N.Y. July 13, 2020)............................24

Hoffmann v. Sbarro, Inc.,
982 F. Supp. 249 (S.D.N.Y. 1997) .........................................................................13

Hosking v. New World Mortg., Inc.,
602 F. Supp. 2d 441 (E.D.N.Y. 2009) ...................................................................13

International Ass'n of Machinists v. Gonzales,
356 U.S. 617 (1958)................................................................................................9

Kaufman v. Allied Pilots Ass'n,
274 F.3d 197 (5th Cir. 2001) .................................................................................10

Lee v. ABC Carpet & Home,
236 F.R.D. 193 (S.D.N.Y. 2006) ...........................................................................13

Lingle v. Norge Div. of Magic Chef,
486 U.S. 399 (1988)................................................................................................19

Livadas v. Bradshaw,
114 S. Ct. 2068 (1994)............................................................................................10

Llanos v. Brookdale Univ. Hosp. & Med. Ctr.,
No. 10-CV-1726 DLI RML, 2011 WL 809615 (E.D.N.Y. Mar. 2, 2011) ..............................22

Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v.
Lucas Floor Co.,
369 U.S. 95 (1962).................................................................................................18

ii

Lynn v. Jefferson Health System,
    No. CIV 09-6086, 2010 WL 3656634 (E.D. Pa. Sept. 15, 2010) ............................................20

McLaughlin v. Richland Shoe Co.,
    486 U.S. 128 (1988) ............................................................................................................14

Metro. Life Ins. Co. v. Massachusetts,
    471 U.S. 724 (1985) ............................................................................................................11

Silverman ex rel. NLRB v. Major League Baseball Player Relations Comm.,
    67 F.3d 1054 (2d Cir. 1995) ................................................................................................11

Republic Steel Corp. v. Maddox,
    379 U.S. ..............................................................................................................................21

Republic Steel Corp. v. Maddox,
    379 U.S. 650 (1965) ..............................................................................................................9

Salamea v. Macy's E., Inc.,
    426 F. Supp. 2d 149 (S.D.N.Y. 2006) ................................................................................21

San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon,
    359 U.S. 236 (1959) ...............................................................................4, 8, 9, 10, 11, 12, 19

Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,
    436 U.S. 180 (1978) ............................................................................................................11

Semper v. New York Methodist Hosp.,
    786 F. Supp. 2d 566 (E.D.N.Y. 2011) ................................................................................21

U.S. ex rel. Siegel v. Roche Diagnostics Corp.,
    988 F. Supp. 2d 341 (E.D.N.Y. 2013) ..................................................................................8

Silverman v. Verrelli,
    No. CIV.A. 11-6576 SRC, 2012 WL 395665 (D.N.J. Feb. 7, 2012) ......................................19

Textile Workers v. Lincoln Mills,
    353 U.S. 448 (1957) ............................................................................................................18

Vaca v. Sipes,
    386 U.S. 171 (1967) ............................................................................................................22

Verbal v. Giant of Maryland, LLC,
    204 F. Supp. 3d 837 (D. Md. 2016) ....................................................................................22

Walling v. Youngerman–Reynolds Hardwood Co.,
    325 U.S. 419 (1945) ............................................................................................................12

4412288v1

<u>Walsh v. Int'l Bhd. of Elec. Workers (I.B.E.W.) Local 503</u>,
    62 F. Supp. 3d 300 (S.D.N.Y. 2014) .................................................................19

<u>White v. White Rose Food, a Div. of DiGiorgio Corp.</u>,
    128 F.3d 110 (2d Cir. 1997) ...........................................................................22

<u>Wright v. Merk</u>,
    118 F. Supp. 3d 1228 (E.D. Wash. 2015) .......................................................10

**Statutes**

9 U.S.C.A. § 10 ..........................................................................................................21

29 U.S.C.A. § 255 ......................................................................................................13

29 U.S.C.A. § 256 ......................................................................................................14

29 U.S.C. § 158(a)(5) ...................................................................................................9

29 U.S.C. § 185(a) ......................................................................................................18

29 U.S.C. § 207(a)(1) .................................................................................................12

Labor Management Relations Act Section 301 ...........................7, 18, 19, 20, 21, 22, 23

N.Y. Lab. Law § 220(7) ............................................................................................8, 9

National Labor Relations Act § 7 ...............................................................................10

NLRA § 8(a)(5) ...............................................................................................9, 10, 11

NLRA § 9(a) ...............................................................................................................10

NYLL Article 6 ...........................................................................................2, 3, 6, 7, 23

NYLL Sections 191 and 198 .........................................................................................5

NYLL Section 196(3) ....................................................................................................6

NYLL § 220(8) .............................................................................................................9

NYLL Section 232 ........................................................................................................4

**Other Authorities**

FRCP Rule 23 ...........................................................................................................2, 9

FRCP Rule 12(b)(6) ..............................................................................................1, 7, 25

iv

## PRELIMINARY STATEMENT

Defendants Skanska Koch, Inc. ("SKI") and Skanska Koch-Kiewit JV ("SKKJV") (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Third Amended Complaint (the "TAC") pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6).

The Plaintiffs are New Jersey construction union employees of SKKJV who worked for a period of time on the Bayonne Bridge, which spans New York and New Jersey. As New Jersey union employees, all terms and conditions of employment are governed by collective bargaining agreements ("CBAs") between SKKJV and the employees' respective New Jersey local unions. The cornerstone of nearly every count of the TAC is Plaintiffs' claim that the CBA has been supplanted by an agreement to which their respective unions are not a party - *i.e.*, the construction agreement between their employer SKKJV and the Port Authority of New York and New Jersey ("PANYNJ") (the "Construction Agreement"). They attempt to do so by asserting a state common law claim as a putative third-party beneficiaries of the Construction Agreement. Under United States Supreme Court precedent and its progeny, it is clear that their claim is preempted by the National Labor Relations Act ("NLRA") and, accordingly, all claims that rely on the third-party beneficiary breach of contract theory are preempted.

Counts One through Five of the TAC are all interrelated, seeking either (i) to raise Plaintiffs' base rate pursuant to the Construction Agreement and in violation of the CBAs for unspecified work hours on the New York side of the Bayonne Bridge span or (ii) to use a variety of State and Federal laws - such as New York Labor Law ("NYLL") or the Fair Labor Standards Act ("FLSA") - to collect those reset base wages.

In Counts One Through Five, Plaintiffs assert that the CBA should be overridden by a Construction Agreement; however, in Counts Six and Seven, they inconsistently allege that the

CBA must be enforced with respect to an alleged failure to pay an "irregular shift differential" for work allegedly performed by Plaintiff Cortese and others in his union. Plaintiff Cortese's claims with respect to an "irregular shift differential" (Counts Six and Seven) require the interpretation and enforcement of his CBA and the CBAs of others, and therefore these Counts are preempted under the Labor Management Relations Act ("LMRA") in accordance with well-settled United States Supreme Court precedent.

Beyond clear pre-emption, Plaintiffs' claims are also fundamentally flawed for myriad reasons. In Counts One and Two, Plaintiffs seek to collect overtime at one and a half (1.5) times the reset higher base rates to which they claim entitlement. This is flawed because Supreme Court precedent has established that overtime under the FLSA must be calculated based upon an employee's *actual pay rate*. Moreover, Plaintiffs Cortese, Julio, and Leyble's claims under the FLSA are barred by the two-year statute of limitations, while the remaining Plaintiffs' claims are partially time-barred with respect to any work performed prior to October 22, 2018. Finally, Plaintiffs fail to plead violations of NYLL Article 6 with respect to wage statements (Counts Four and Seven) because they fail to claim that their wage statements did not accurately reflect their pay actually received.

To the extent the TAC purports to assert claims both on behalf of Plaintiffs as individuals and on behalf of a putative FLSA Collective or Rule 23 Class, all individual and putative collective or class claims must likewise be dismissed.

## SUMMARY OF CLAIMS AND ALLEGATIONS.

The Named Plaintiffs consist of one New Jersey Operating Engineer (Cortese) and five New Jersey Ironworkers (Kearney, Julio, Siciliano, Brooks, and Leyble) who worked on the

Bayonne Bridge project (the "Project") for SKKJV pursuant to their respective union CBAs[1]. Plaintiffs' TAC asserts claims for (1) Fair Labor Standards Act ("FLSA") overtime, (2) New York Labor Law ("NYLL") overtime (3) NYLL failure to pay wages (4) NYLL Article 6 wage statement claims (5) breach of contract as intended third-party beneficiaries of SKKJV's contract with the PANYNJ; (6) NYLL failure to pay wages in accordance with the IUOE collective bargaining agreement ("CBA") and (7) NYLL Article 6 wage statement claims related to the IUOE CBA. Counts One through Five depend on the unsupportable allegation that Plaintiffs are third-party beneficiaries of the Construction Agreement[2].

Plaintiffs worked on a large Project for SKKJV involving exclusively union labor from New York and New Jersey, from numerous trades and local unions, each with their own CBA. All employees of SKKJV were paid wages in accordance with the CBA which applied to the employee's local union for all hours worked, regardless of where the employee worked on the Bayonne Bridge span. Plaintiffs take issue with the rates they were paid for work they allege took place on a part of the Bayonne Bridge which was located in New York. With the exception of the discrete claims related to "irregular shift differentials" for IUOE employees alleged in Counts 6 and 7, which are addressed *infra*, Plaintiffs do not dispute that they were paid in accordance with their respective CBAs, but instead insist that the construction agreement for the Project between PANYNJ and SKKJV entitles them to higher rates for work performed on the New York side of

---

[1] Cortese alleges that he is a member of the International Union of Operating Engineers, Local 825 (hereafter "IUOE") and the Ironworkers Plaintiffs allege that they belong to Iron Workers Local Union No. 11 ("Local 11") based out of Bloomfield, New Jersey.

[2] Defendant SKKJV was the entity that held the contract with the PANYNJ and is a joint venture composed of SKI and Kiewit Infrastructure Co. In a declaration filed in support of Plaintiff's Motion for Conditional Certification of the FLSA Collective Action (ECF #36), Plaintiff Cortese conceded that he was only employed by the Defendant joint venture and not SKI or Kiewit Infrastructure Co. In the TAC, Plaintiffs state that they were employed by SKKJV. (TAC, at Paragraphs 26-38). Defendants SKI and Kiewit Infrastructure Co. (who are represented by other counsel) reserve their rights with respect to the propriety of their being named in this suit. Any allegations or references in the TAC to Plaintiff's employer should have been limited to the joint venture.

the Bayonne Bridge. More specifically, they allege that Plaintiffs' base wages should be set, for time worked on the New York side of the Bayonne Bridge, not by the CBAs, but by wage rates allegedly set by the Construction Agreement.[3] There is no allegation that IUOE or Local 11 agreed to any variation of their CBAs in this regard.

As a preliminary matter, Plaintiffs' First through Fifth claims, that Defendants should have paid Plaintiffs additional amounts in violation of the respective CBAs, are preempted by the NLRA. It is undisputed that, at all relevant times, Plaintiffs were paid in accordance with the terms and conditions of their applicable CBAs.[4] In essence, Plaintiffs seek to enforce a third-party agreement which – if enforced – would require Defendants to violate the CBA, constituting an Unfair Labor Practice ("ULP") prohibited by the National Labor Relations Act ("NLRA").

As discussed in detail *infra*, common law claims which conflict with actions either protected or prohibited by the NLRA are preempted by the Supreme Court's holding in San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236 (1959) and its progeny. Accordingly, these claims are without merit and must be dismissed.

In Plaintiffs' First and Second Claims for Relief, Plaintiffs allege that they are entitled to overtime compensation under the FLSA (TAC, ¶¶ 165-170) and NYLL Section 232 (TAC, ¶¶ 171-175) utilizing a higher base hourly rate than they were actually paid (*i.e.*, instead of the rate set by their respective CBAs) by virtue of the Construction Agreement. These claims must be dismissed because Plaintiffs do not allege that SKKJV failed to pay them overtime at one and a half (1.5) times their regular rate of pay or their CBA rates, but rather they claim that they did not receive

---

[3] It is not alleged that any particular prevailing wage statute applies as a matter of law, but rather as a matter of contract pursuant to the Construction Agreement. Nevertheless, Defendants deny that any statutory obligation to pay prevailing wage applies.

[4] Plaintiffs' allegation that they should have been paid New York wages (contrary to the express terms of the CBA) is wholly unsupported by reference to any authority. Moreover, Plaintiffs interpretation is untenable and would disrupt the negotiation of CBAs by undermining the union's bargaining power.

the appropriate base wage to begin with for unspecified hours worked on the New York side of the Bayonne Bridge, pursuant to the Construction Agreement. Plaintiffs' asserted claim to Davis-Bacon Act rates and New York City prevailing wage rates[5] do not stem from any statutory entitlement to same; indeed, Plaintiffs do not assert any claim to statutory entitlement. As discussed above, both NYLL and FLSA overtime claims are preempted inasmuch as the rates Plaintiffs seek to be paid conflict directly with the rates set in their respective CBAs. Even if not preempted, the claims of Cortese, Julio, and Leyble, and certain of the allegations of the other Plaintiffs, are barred, in whole or in part, by the two-year statute of limitations for claims under the FLSA and with respect to any work allegedly performed before October 22, 2018.

Even if Plaintiffs claims were not time barred, preempted, or contrary to applicable law, the TAC fails to contain the requisite factual allegations to state an overtime claim under the FLSA or NYLL. Regarding Claims 1 and 2, Plaintiff fail to allege the frequency and amount of overtime affected, nor do Plaintiffs allege that they SSKJV ever failed to pay them at the proper overtime rate for their actual regular rate of pay. Plaintiffs generally plead that they "regularly worked" on the New York side of the Bayonne Bridge, but fail to plead the amount of time per week spent in each location, nor do they plead the frequency of their work in New York.

In Count 3, Plaintiffs allege failure to pay wages pursuant to NYLL Sections 191 and 198 utilizing allegedly contractually required Davis-Bacon and New York City prevailing wages, instead of their respective CBA rates, by virtue of the Construction Agreement. (TAC, ¶¶ 176-180).  As stated above, Count 3 is preempted because the requested wage rate conflicts with their respective CBAs and to pay Plaintiffs such wages would cause Defendants to commit an ULP.

---

[5] Plaintiffs purport to seek New York City prevailing wage. However, even taking the TAC on its face, there is no allegation that establishes their statutory or contractual entitlement to same.

Additionally, it is undisputed that, at all relevant times, Defendants properly paid Plaintiffs in accordance with the CBAs (with the exception of the limited claims stated herein in Counts 6 and 7 regarding "irregular shift differentials").

In Count 4, Plaintiffs allege that Defendants failed to provide appropriate wage statements required under NYLL Section 196(3). (TAC, ¶¶ 181-185). Their claim is not that Defendants did not provide appropriately detailed wage statements, but rather that because the Defendants utilized an incorrect wage rate, the statements failed to comply with the law. Plaintiffs do not dispute that their wage statement accurately reflected the amount they were actually paid, and therefore their allegation fails to state a claim under NYLL. Plaintiffs fail to otherwise specify how Article 6 is violated and, to the extent that this claim is largely derivative of their claims in Counts 1 through 3, it is also preempted.

In Count 5, Plaintiffs assert that, as third-party beneficiaries to the Construction Agreement, they are entitled to a base wage (and consequently overtime) set by prevailing wage rates which are allegedly incorporated into the Construction Agreement. (TAC, ¶¶ 186-190). Plaintiffs are unclear as to what rates they seek, though they allege in Counts One and Three that the Construction Agreement contractually requires payment of wages pursuant to Davis Bacon Act rates.  Plaintiffs do not assert any statutory entitlement to these rates.  Plaintiffs reference the New York City prevailing wage rates; however, they do not allege any statutory entitlement to New York City prevailing wage rates and there are no sufficient allegations that it otherwise applies. Accordingly, and because this claim is preempted, Count Five must be dismissed.

In Count 6, Plaintiffs assert a NYLL failure to pay wages claim on behalf of a proposed Local 825 Class. This claim relates to Plaintiff Cortese's alleged entitlement to an irregular shift differential set by the CBA. As a matter of law, where interpretation of the CBA is required, the

claim is preempted. There are limited circumstances in which an individual Plaintiff may directly bring a claim under LMRA Section 301, which Plaintiff has indisputably failed to do herein. Plaintiff fails to plead claims in the TAC that could constitute a violation of the CBA inasmuch as Plaintiff misstates the requirements of the CBA. (TAC, ¶¶ 191-194). Even if Plaintiff plead a violation of the CBA, his claims under Counts 6 and 7 is preempted under the LMRA because his entitlement to an "irregular shift differential", by their very nature, require the interpretation of multiple CBAs (the IUOE CBA, the CBA of any other Local Union members with whom Plaintiff worked, and the CBAs of other trades with whom Plaintiff worked) would require the interpretation of the CBA. In Count 7, Plaintiff asserts a NYLL Article 6 violation on behalf of a proposed Local 825 Class, alleging that because they claim to have been improperly paid for "irregular shift differentials", their wage statements were inaccurate. (TAC, ¶¶ 195-199). However, like Count 4, Plaintiffs do not assert that their wage statements failed to accurately reflect the amounts they were actually paid, and therefore must be dismissed.

## STANDARD FOR A MOTION TO DISMISS UNDER FRCP 12(B)(6)

In order to survive a motion to dismiss pursuant to FRCP 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, supra, 556 U.S. at 678. In deciding a motion to dismiss, "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" U.S. ex rel. Siegel v. Roche Diagnostics Corp., 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009)).

4412288v1

However, the Supreme Court held in Iqbal that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678–79. Further, the Iqbal court held that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. As discussed below, Plaintiffs' pleadings fail to state any cognizable claim, even assuming their factual allegations are true.

## LEGAL ARGUMENT

## POINT I

## PLAINTIFFS' WAGE AND OVERTIME CLAIMS ASSERTED IN COUNTS ONE THROUGH FIVE ARE PREEMPTED BY THE NLRA UNDER *GARMON*

Plaintiffs' First, Second, Third, Fourth, and Fifth Claims for Relief must be dismissed because they (1) have not pled any entitlement to New York City prevailing wages under the Construction Agreement and (2) their claim that they are entitled to contractual wage rates under Davis-Bacon Act schedules is preempted by the NLRA. Plaintiffs fail to point to any contractual provision which requires them to be paid at the same rates as their sister unions in New York. To the extent Plaintiffs could point to provisions of the Construction Agreement which purportedly reference the Davis-Bacon Act wage schedules, such claims are preempted by the NLRA.

Plaintiffs do not claim any statutory entitlement to the Davis-Bacon rates or New York City prevailing wage rates, nor could they.[6] Plaintiffs, as members of the IUOE and Local 11, are

---

[6] In order to bring a statutory claim for prevailing wages under New York law, Plaintiffs must exhaust their administrative remedies under NYLL. NYLL § 220(7) states that the fiscal officer "shall on a verified complaint in writing of any person interested or of any employee organization" or "on his own initiative cause a compliance investigation to be made to determine whether the contractor or a subcontractor has paid the prevailing rate of wages". N.Y. Lab. Law § 220(7). NYLL § 220(8) explicitly outlines the procedures for hearings and the issuing of an order or determination as to the compliance with the prevailing wage rate. Id. at 220(8). After the entry of such an order, any party may commence a CPLR Article 78 proceeding in the Appellate Division of the New York Supreme Court

subject to their respective CBAs. Thus, Plaintiffs' wages, benefits, and other terms and conditions of employment are therefore governed by their CBAs. They make parallel allegations with respect to other members of the putative FLSA Collective and putative FRCP Rule 23 class.  The essence of their claims is that the Construction Agreement requires their employer to pay them wages and benefits at variance with the CBAs which govern their terms and conditions of employment, for time spent working on the New York side of the Bayonne Bridge span.  As such, their claims are preempted by the NLRA.

The U.S. Supreme Court has found preemption in cases where state statutes or common law claims concern conduct which is arguably permitted or prohibited by the NLRA. <u>Garmon</u>, 359 U.S. 236; <u>International Ass'n of Machinists v. Gonzales</u>, 356 U.S. 617 (1958); <u>Republic Steel Corp. v. Maddox</u>, 379 U.S. 650, 652–53 (1965)[7]

According to § 8(a)(5) of the NLRA it is an unfair labor practice ("ULP") for an employer to refuse to engage in collective bargaining with its employees' union. 29 U.S.C. § 158(a)(5) (codifying § 8(a)(5) of the Act). An employer commits a ULP by refusing to negotiate with its employees' union over mandatory subjects of collective bargaining. These mandatory subjects, listed in § 9(a) of the NLRA, are: "rates of pay, wages, hours of employment, or other conditions

---

within thirty days for review.  *Id.*  This was likewise acknowledged in <u>Goodman v. Port Auth. of New York & New Jersey</u>, 850 F. Supp. 2d 363 (S.D.N.Y. 2012), this Court stated, "[o]nly after an investigation and hearing have been completed and a final determination and order have been rendered by the appropriate fiscal officer (*e.g.,* State Commissioner of Labor) in favor of an employee may the employee institute an action against the contractor for the difference between the sum actually paid the employee as wages and the sum that should have been paid if the statute had been followed." <u>Id.</u> at 382.  <u>Cf.</u> <u>Cortese v. Skanska USA, Inc.,</u> No. 19-CV-11189(JSR), 2020 WL 2748438, at *2 (S.D.N.Y. May 26, 2020) (holding Plaintiff failed to exhaust his administrative remedies with respect to claims under New York prevailing wage law). Plaintiffs have not filed a verified complaint with the Commissioner of Labor, nor has the Commissioner of Labor instituted an investigation into Defendants' compliance with NYSWPL, nor does Plaintiff allege that he has done so in his Complaint.  Inasmuch as Plaintiff failed to exhaust his administrative remedies, any claim based upon an alleged violation of NYSPWL must be dismissed.

[7] Plaintiffs, perhaps, should have brought a grievance to their respective Unions, as required by their CBAs, or implored the union to file ULP charges with the NLRB.  For unknown reasons, none of the Plaintiffs pursued these options.

9

of employment." Id. § 159(a) (codifying § 9(a) of the Act).  In addition to a literal refusal to sit down at the bargaining table, an employer also violates § 8(a)(5) by unilaterally implementing a change in the workplace that violates its collective bargaining agreement. Bldg. Trades Employers' Educ. Ass'n v. McGowan, No. 98 CIV. 4998 (MBM), 2001 WL 682740, at *3 (S.D.N.Y. June 18, 2001), rev'd on other grounds, 311 F.3d 501 (2d Cir. 2002).

The Supreme Court held in Garmon:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.

Garmon, 359 U.S. at 244.

"Conduct only need be "arguably subject to § 7 or § 8 of the [NLRA]" to be preempted under Garmon. Garmon, 359 U.S. at 245. Garmon and its progeny have been applied to preempt state statutes and state common law claims which concern activities which are protected or prohibited under the NLRA. See Kaufman v. Allied Pilots Ass'n, 274 F.3d 197 (5th Cir. 2001) (holding that state law claims of tortious interference with contract were federally preempted under Garmon and must be dismissed); Wright v. Merk, 118 F. Supp. 3d 1228, 1237 (E.D. Wash. 2015) (holding the plaintiff's implied contract claim was preempted under Garmon); Livadas v. Bradshaw, 114 S. Ct. 2068 (1994) (federal law preempted Commissioner's policy construing state law to bar enforcement of statutes requiring employers to pay all wages due immediately upon employee's discharge, and imposing penalty for refusal to promptly pay, if terms and conditions of employee's employment were governed by collective bargaining agreement containing arbitration clause); Barbieri v. United Techs. Corp., 255 Conn. 708, 745–46 (2001) (holding that plaintiffs' claims, which seek to enforce individual contracts for the payment of the wage

supplements above the bargained-for wage rates in the collective bargaining agreement, are subject to the exclusive jurisdiction of the National Labor Relations Board under Garmon and its progeny.)

If Defendant SKKJV were to abide by the Construction Agreement as it pertains to wages and benefits for workers covered by a CBA, it would violate the CBA and thus commit an unfair labor practice under Section 8(a)(5) of the NLRA.  Id.;  See also Silverman ex rel. NLRB v. Major League Baseball Player Relations Comm., 67 F.3d 1054, 1056 (2d Cir. 1995) (finding that matters were related to wages, hours, and other terms and conditions of employment were mandatory subjects for collective bargaining and that unilateral actions affecting salary and free agency constituted unfair labor practices).

Garmon preemption protects the federal scheme of regulation of labor relations as well as the Board's primary jurisdiction to decide what conduct is protected or prohibited in labor-management relations under the NLRA. Such preemption thereby assures a coherent national labor policy. See Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 748 (1985); Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 187–88 (1978); see also Air Transp. Ass'n of Am. v. Prof'l Air Traffic Controllers Org., 667 F.2d 316, 323 (2d Cir.1981) ("Garmon rests primarily on the need to ensure a consistent body of federal labor law by preempting potentially inconsistent state court adjudication.").

Plaintiffs' First, Second, Third, Fourth and Fifth Claims for Relief arise out of a third-party agreement which purports to require Plaintiffs' employer to provide compensation at variance with the applicable CBAs for time worked on the New York side of the Bayonne Bridge span.  In essence, Plaintiffs are asserting that, the alleged terms of the Construction Agreement require Defendant SKKJV to violate the applicable CBAs which would constitute a violation of the NLRA.  Further, with respect to Plaintiffs' Fourth Claim for Relief, Plaintiffs' claim is preempted

11

to the extent it is entirely derivative or Plaintiffs' First, Second, Third, and Fifth Claims for Relief with respect to Plaintiffs' wage rates. Accordingly, Plaintiffs' First, Second, Third, Fourth and Fifth Claims for Relief are preempted under <u>Garmon</u> and must be dismissed.

**POINT II**

**PLAINTIFFS FAIL TO ADEQUATELY PLEAD A CLAIM FOR OVERTIME VIOLATIONS UNDER NYLL AND FLSA (COUNTS ONE AND TWO)**

The FLSA requires that employees be paid overtime compensation equal to at least "one and one-half times the regular rate at which [the employee] is employed," for all hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). The United States Supreme Court has determined that the regular rate of pay under the FLSA refers to the "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." <u>Walling v. Youngerman–Reynolds Hardwood Co.</u>, 325 U.S. 419 (1945); <u>Bay Ridge Operating Co. v. Aaron</u>, 334 U.S. 446, 459–60, 68 S. Ct. 1186, 1194, 92 L. Ed. 1502 (1948)("[T]he rule for determining the regular rate of pay is to divide the wages actually paid by the hours actually worked in any workweek and adjudge additional payment to each individual on that basis for time in excess of forty hours worked for a single employer"). The same rule applies under the NYLL. <u>Ethelberth v. Choice Sec. Co.</u>, 91 F. Supp. 3d 339, 361 (E.D.N.Y. 2015) (holding that under the NYLL, the correct rate is based on the rate *actually paid* to [plaintiff] for normal, non-overtime hours). Courts in this circuit have held that while the FLSA requires employers to pay each employee a guaranteed minimum wage, it does not provide liability for underpayment of hours at prevailing wage rates. <u>Grochowski v. Phoenix Const</u>., 318 F.3d 80, 87 (2d Cir. 2003).

Further, Plaintiffs fail to plead the frequency or duration of their time worked on the New York side of the Bayonne Bridge span. The Second Circuit has held, in a FLSA action, "that the district court was under no obligation to accept as true their statement, amounting to a bare legal

12

conclusion, that they worked in excess of forty hours; moreover, absent any supporting factual detail, there were no plausible inferences to be drawn in their favor". Bonn-Wittingham v. Project OHR, Inc., 792 F. App'x 71, 75 (2d Cir. 2019). Plaintiffs' allegations are bare legal conclusions devoid of detail or specificity sufficient to state a claim for overtime work performed in New York. Accordingly, Plaintiffs First and Second Claims for Relief must be dismissed.

## POINT III

### PLAINTIFFS' FIRST CLAIM FOR RELIEF FOR OVERTIME PURSUANT TO THE FLSA IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

Notwithstanding three attempts to restate their purported claims, Plaintiffs cannot escape the statute of limitations which precludes Count 1 to the extent the claim is based on transactions or occurrences on or before October 22, 2018. Claims pursuant to the Fair Labor Standards Act "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C.A. § 255.

The limitations period on a FLSA claim continues to run until individual plaintiffs become parties to the case.  See D'Arpa v. Runway Towing Corp., No. 12-CV-1120, 2013 WL 3010810, at *5 (E.D.N.Y. June 18, 2013) ("the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form"); Hosking v. New World Mortg., Inc., 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009)(same); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 199 (S.D.N.Y. 2006)(same); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 260 (S.D.N.Y. 1997)(same). Under 29 U.S.C.A. § 256, a claim under the FLSA is considered to be commenced for statute of limitations purposes as to any individual plaintiff either:

13

(a)      on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

(b)      if such written consent was not so filed or if his name did not so appear -on the subsequent date on which such written consent is filed in the court in which the action was commenced. Id.

## A.      Plaintiffs' Claims are Barred, In Whole or In Part, by the Statute of Limitations under the FLSA.

The two-year statute of limitations under the FLSA applies to Plaintiffs' claims because Plaintiffs have made not adequately pled their entitlement to the application of the three-year statute of limitations for a "willful" violation.  The standard for willfulness is that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute". McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). While Plaintiffs assert that a "willful" violation exists, they fail to allege any facts to support their claim that there was a "willful" violation. Indeed, Plaintiffs do not dispute that they received the rate of pay set by their respective CBAs and that they received overtime properly calculated on the basis of that rate of pay.  Plaintiffs' entire basis for their FLSA claim is that they were contractually entitled to the higher New York City prevailing wage rate as a base wage for work performed on the New York span of the Bayonne Bridge and, therefore, additional overtime compensation calculated using the higher Davis-Bacon Act or New York City prevailing wage as their regular rate of pay.  This argument manifests a gross misunderstanding of FLSA claims.

As discussed in Point II *supra,* Plaintiffs fail to state a claim under the FLSA.  Even if Plaintiffs' claims were cognizable claims under the FLSA, SKKJV's good-faith compliance with the terms of Plaintiffs' respective CBAs and payment of Plaintiffs at the appropriate overtime rate for their actual wage rate, certainly demonstrates that no "willful" violations occurred.

14

### i.      **Plaintiff Cortese's Claims are Wholly Barred by the Statute of Limitations**.

Plaintiff Cortese alleges in the TAC that he began working on the Project on August 17, 2015, and that he worked on the Project for five months thereafter. (TAC, at ¶¶ 26, 45-46). Accordingly, his claims are completely time-barred by the applicable statute of limitations, regardless of whether one applies the two- or three-year statute of limitations, which would have expired on February 25, 2018 or February 25, 2017, respectively.

### ii.     **Plaintiff Julio's Claims are Wholly Barred by the Statute of Limitations**.

Plaintiff Julio alleges that he commenced employment as a journeyman ironworker on the Project on or about October 13, 2014.  (TAC, at ¶ 31). However, Plaintiff Julio's claims would be time-barred in their entirety regardless of whether one applies the two- or three-year statute of limitations, because he has not worked on the Project since May 21, 2017 and must be dismissed accordingly. (TAC, ¶ 50).

### iii.    **Plaintiff Brooks' Claims are Partially Barred by the Statute of Limitations**.

Plaintiff Brooks alleges that he commenced employment as an ironworker on the Project on or about October 16, 2014 and that between in or about June 2015 and January 2018, he was an ironworker foreman on the Project.  (TAC, at ¶ 35). He further alleges that he worked on the Project until February 2019. (TAC, at ¶ 54). Any claims relating to Plaintiff Brooks' work performed prior to October 22, 2018 must be dismissed as time-barred.  Even applying the three-year statute of limitations, Plaintiff Brooks' claims are barred except claims between October 22, 2017 and February 2019.

### iv.     **Plaintiff Leyble's Claims are Barred, in Whole or in Part, by the Statute of Limitations**.

Plaintiff Leyble alleges that he commenced employment as an ironworker on the Project in or about March 2014 and that between in or about May 2014 and September 2018, he was an

ironworker foreman on the Project. (TAC, ¶ 37). Since Plaintiff Leyble did not work in the two years before becoming a Named Plaintiff, his claims would be time-barred in their entirety as well, and must be dismissed accordingly, inasmuch as he ceased working on the Project in September 2018. (TAC, ¶ 56). Even applying the three-year statute of limitations, Plaintiff Leyble's claims are barred except claims between October 22, 2017, and September 2018.

       **v.**       **Plaintiff Kearney's Claims are Partially Barred by the Statute of Limitations.**

Plaintiff Kearney alleges he commenced working as a journeyman ironworker on the Project in or about October 2014 and that in or around April 2017, he became an ironworker foreman on the Project. (TAC, ¶ 28). He alleges that he worked on the Project until February 15, 2019. (TAC, ¶ 48). Any claims relating to Plaintiff Kearney's work performed prior to October 22, 2018 must also be dismissed as time-barred. Even applying the three-year statute of limitations, Plaintiff Kearney's claims are barred except claims between October 22, 2017, and February 15, 2019.

       **vi.**      **Plaintiff Siciliano's Claims are Partially Barred by the Statute of Limitations.**

Plaintiff Siciliano alleges that he commenced employment as a journeyman ironworker on the Project in or about October 2014. (TAC, at Paragraph 33). He further alleges that he worked on the project until February 2019. (TAC, at Paragraph 52). Any claims relating to Plaintiff Siciliano's work performed prior to October 22, 2018, must also be dismissed as time-barred. Even applying the three-year statute of limitations, Plaintiff Siciliano's claims are barred except claims between October 22, 2017, and February 2019.

**POINT IV**

**COUNTS SIX AND SEVEN OF THE TAC ARE PREEMPTED BY THE LMRA**

Counts 6 and 7, which assert failure to pay an "irregular shift differential" in accordance with the IUOE CBA must be dismissed because Plaintiffs' claims are preempted by the LMRA.

16

Plaintiff Cortese alleges that, pursuant to the CBA, "[w]hen working with other trades or local unions who receive a higher irregular shift differential, the Local 825 Employee will also receive the higher shift differential." (TAC, ¶ 145). Plaintiff Cortese alleges that he and other IUOE members regularly worked an "irregular shift" and were not provided with a higher irregular shift differential. (TAC, ¶¶145-148; 191-194). However, Plaintiff fails to identify who he was working "irregular shifts" with, what differential they received, and whether or how it differed from his own.  Further, while Plaintiffs' claim is asserted as a claim under NYLL for failure to pay wages, it is truly a breach of CBA claim in disguise. The sheer fact that Plaintiff's claim requires the interpretation of multiple CBAs highlights that this claim is subject to and preempted by the LMRA.

Article V, Section 2 of the IUOE CBA states, in relevant part:

> An "Irregular" Shift would start any time from 5:00 PM to 12:00 AM. The first eight (8) hours shall be at straight time plus fifteen percent (15%) Monday through Friday. When working with other trades or local unions who receive a higher irregular shift differential, the Local 825 Employee will also receive the higher shift differential.
>
> For construction project contracts where an owner mandates that construction work shifts are to have a starting time between 8:00 PM and Midnight. provided there are consecutive hours of work within the shift, the Employer shall be obligated to pay shift differential. not premium rate, for those shift hours worked within Saturday 12:00 AM to 6:00 AM on Sunday 8:00 PM to Midnight.
>
> When the Department of Labor does not include the Shift Premium in the prevailing wage rate schedule and/or in the event of non-union or vertical union competition, the shift work premium will be waived. Where the bid documents and/or Contract require the Employer to work restricted hours or for any mutually agreed reason an Employer may work four (4) ten (10) hours days at the straight time rate during the week. In the event of rain when the Employees are not allowed to start ten (10) hours at the straight time rate will be paid. If Friday is worked time and one-half (1 1/ 2) will be paid for all hours.
>
> An Irregular Shift can be worked when at a Pre-Job Conference the Union and the Contractor agree to comply with the Contract documents that specify particular hours to be worked because of traffic control from Monday through Friday or on any two (2) consecutive of the five (5) regular work-days when owner mandated.

17

(IUOE Collective Bargaining Agreement, Declaration of Michael J. P. Schewe, Exhibit A).

Plaintiffs fail to allege facts sufficient to state a claim for failure to pay under the aforementioned provision. Under the CBA, Plaintiff would need to demonstrate that he worked "irregular shifts" as defined in the CBA (generally, shifts starting between 5:00 p.m. and 12:00 a.m.), that he worked with other trades or locals who received a higher irregular shift differential for those particular shifts, and that the shift premium was not waived. Plaintiff also fails to plead whether the Department of Labor included this "irregular shift differential" in its wage rate schedules. Even if Plaintiff did sufficiently allege a violation of the CBA, to determine Plaintiffs' entitlement to pay under this provision, this Court would be required to interpret the CBA and would invariably be preempted by LMRA Section 301. Plaintiffs do not attempt to assert a claim under LMRA Section 301, even though it is the exclusive basis for federal jurisdiction over a claim for breach of a collective bargaining agreement, under which there exists a body of federal jurisprudence for adjudicating such claims. [8] See Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Floor Co., 369 U.S. 95, 103 (1962) ("The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements."); Textile Workers v. Lincoln Mills, 353 U.S. 448, 456-57 (1957) (holding that for claims under the LMRA, state law does not provide an independent source of private

---

[8] Section 301 states as follows:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

rights). Rather, they frame the claim as a claim under NYLL in a transparent attempt to skirt the LMRA. Accordingly, Count 6 must be dismissed as preempted by the LMRA.

Courts have recognized the applicability of the extraordinary "complete preemption doctrine" under LMRA § 301 where a claim involves analysis of a CBA. See, e.g., Walsh v. Int'l Bhd. of Elec. Workers (I.B.E.W.) Local 503, 62 F. Supp. 3d 300, 303 (S.D.N.Y. 2014); Silverman v. Verrelli, No. CIV.A. 11-6576 SRC, 2012 WL 395665, at *3 (D.N.J. Feb. 7, 2012). When the resolution of a state law claim is inextricably tied to a CBA "that claim must either be treated as a §301 claim […] or dismissed as pre-empted by federal labor-contract law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 221 (1985). Section 301's preemptive force is "so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization," making any such suit "purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [LMRA Section 301]." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 24 (1983).

Like Garmon preemption, Section 301 preemption also "ensure[s] uniform interpretation of collective-bargaining agreements, and thus […] promote[s] the peaceable, consistent resolution of labor-management disputes." Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 409 (1988); see also Baker v. Kingsley, 387 F.3d 649, 657 (7th Cir. 2004). A court must look to the legal character of the claim and where the resolution of a claim is sufficiently dependent on the interpretation of a CBA, it must be preempted. Baker, 387 F.3d at 657 (internal citations omitted); Avedisian v. Quinnipiac Univ., 387 F. App'x 59 (2d Cir. 2010) (holding LMRA preempted breach of contract claim because CBA was source of rights she sought to vindicate).

It has been widely recognized that the compensation to which an employee is entitled is based on the language of the CBA between the parties. See Antol v. Esposto, 100 F.3d 1111, 1117

(3d Cir. 1996) (holding that suit for wages allegedly due under the Pennsylvania Wage Payment and Collection Law was "squarely on the terms of the collective bargaining agreement" and affirming the district court's dismissal of the case on the basis that the state law claim as plead was preempted by Section 301); Lynn v. Jefferson Health System, No. CIV 09-6086, 2010 WL 3656634, at *17 (E.D. Pa. Sept. 15, 2010) (holding that plaintiffs' claims were preempted and emphasizing that the wage provisions within the controlling CBAs were at the heart of the plaintiff's claims); See Avedisian v. Quinnipiac Univ., 387 F. App'x 59 (2d Cir. 2010) (holding LMRA preempted breach of contract claim because collective bargaining agreement was source of rights she sought to vindicate). Plaintiffs' claims require the interpretation of not only the IUOE CBA, but also the CBA of any other trade and/or Local Union with whom Plaintiff worked.

Common law breach of CBA claims (or thinly cloaked ones such as the instant "NYLL" claims) are preempted by LMRA Section 301 and therefore must either be dismissed or converted into a claim under Section 301.[9] In this case, the TAC fails to plead any of the essential elements of a Section 301 claim and must be dismissed because Plaintiffs' claims cannot be converted.

Under Section 301 jurisprudence, generally, the Employer and the Union are the parties to the CBA and an individual cannot sue either on their own behalf or on behalf of other employees. In essence, they lack standing. See Brown v. Sterling Aluminum Prod. Corp., 365 F.2d 651, 657 (8th Cir. 1966) (holding that for an individual to bring an action under Section 301, he must be seeking to enforce a right that is "personal to him and vested in him at the time of the suit" but that "whenever the right sought to be enforced is not uniquely personal to the individual but is a right possessed by the bargaining unit as a whole, only the Union as the sole representative of that unit

_____

[9] Plaintiffs' NYLL claim is for failure to pay wages, which merely provides a mechanism to collect wages due and owing.  However, Plaintiffs, as Union-members, have a mechanism through the grievance procedure, the NLRB, or LMRA Section 301, if coupled with a duty of fair representation claim, as discussed *infra*.

would normally have the standing to enforce the right."). Only if the CBA, by its terms, allows them to proceed as an individual, can they do so. However, if there is a grievance/arbitration process, a plaintiff must exhaust it first. See Republic Steel Corp. v. Maddox, 379 U.S. at 652–53; Salamea v. Macy's E., Inc., 426 F. Supp. 2d 149, 156 (S.D.N.Y. 2006) (holding that the employees failed to exhaust her administrative remedies where the claims fell squarely within the scope of the grievance and arbitration provisions); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985) ("A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, […] as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.") (internal citations omitted). Typically, there is a "step" process which ends in final and binding arbitration. See, e.g., Allis-Chalmers Corp., 471 U.S. at 203. An employee could, perhaps, seek to overturn the award pursuant to 301 and/or the Federal Arbitration Act under the standards to overturn an arbitration award which are high. See 9 U.S.C.A. § 10; Blue Tee Corp. v. Koehring Co., 754 F. Supp. 26, 31 (S.D.N.Y. 1990), judgment clarified, 763 F. Supp. 754 (S.D.N.Y. 1991)(stating "it is the Second Circuit's policy to read very narrowly courts' authority to vacate arbitration awards pursuant to the Act".). If there is no grievance procedure, then and only then can an individual immediately sue for breach of CBA under LMRA Section 301.

If a plaintiff lacks standing as an individual under the terms of the CBA, then only the Union can pursue claims on employees' behalf. If they fail to do so, then an individual may pursue a claim under LMRA Section 301 if, any only if, the plaintiff adequately pled excusal from the exhaustion requirements by either pleading that (1) the employer has repudiated the grievance procedure, or (2) that the union has breached its duty of fair representation. See Semper v. New York

Methodist Hosp., 786 F. Supp. 2d 566, 585 (E.D.N.Y. 2011). To prove that a union has breached

its duty of fair representation, a plaintiff must prove that the union's actions or inactions are either

arbitrary, discriminatory, or in bad faith and they must "demonstrate a causal connection between

the union's wrongful conduct and their injuries." Llanos v. Brookdale Univ. Hosp. & Med. Ctr.,

No. 10-CV-1726 DLI RML, 2011 WL 809615, at *2 (E.D.N.Y. Mar. 2, 2011). In other words,

they must plead that a grievance was brought to the union, they failed to appropriately pursue the

grievance adequately (either they declined to pursue it, or they pursued it negligently) and had the

Union done its job adequately, they would have prevailed. See Vaca v. Sipes, 386 U.S. 171, 186

(1967) (holding a wrong-fully discharged employee may bring an action under LRMA Section

301 against his employer despite failure to exhaust contractual remedies if the employee can prove

that the union as bargaining agent breached its duty of fair representation in its handling of the

employee's grievance); DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983) (holding

that where the "union representing the employee in the grievance/arbitration procedure acts in such

a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair

representation", the employee may bring suit against both the employer and union under LMRA

Section 301). These claims are sometimes referred to as a hybrid LMRA Section 301 claim where

the employee seeks a remedy for both a breach of the collective bargaining agreement and a breach

of the duty of fair representation. White v. White Rose Food, a Div. of DiGiorgio Corp., 128 F.3d

110, 114 (2d Cir. 1997); see also Verbal v. Giant of Maryland, LLC, 204 F. Supp. 3d 837, 845 (D.

Md. 2016) ("[I]n a so-called hybrid § 301 action, an employee may forego exhaustion by showing

'*both* 1) that the union breached its duty of fair representation and 2) that his employer violated

the collective bargaining agreement.").

The statute of limitations for a LMRA Section 301 claim is six months.  See DelCostello, 462 U.S. at 172; see also Doyle v. United Airlines, Inc., 914 F. Supp. 2d 325, 337 (E.D.N.Y. 2012) (holding that even if plaintiff could set forth sufficient facts to allege a hybrid LMRA Section 301 claim, her claim would still need to be dismissed because the statute of limitations for such claims is six months).

If Plaintiff Cortese's claims related to his wage rate, including but not limited to whether he was paid a higher "irregular shift" differential as purportedly required by the CBA are litigated, a court will be required to review the CBA to determine Plaintiff's entitlement to relief and, if applicable, what relief is appropriate. Under these circumstances, LMRA Section 301 clearly preempts Plaintiff's claims. However, even if this Court converted Plaintiff's claims into claims under Section 301, Plaintiff Cortese lacks standing to bring his claims for breach of the CBA under LMRA Section 301 because he purports to be bringing them on behalf of all others in his bargaining unit and not solely on his own behalf. Further, Plaintiff Cortese does not allege a breach of the duty of fair representation by the IUOE in the TAC, nor does he allege that he brought a grievance with the IUOE or made any attempt to exhaust the contractual grievance remedies under the CBA; therefore, Plaintiffs' claims must be dismissed for failure to exhaust administrative remedies.  Lastly, even if Plaintiff did state a claim under LMRA Section 301, his claim would be time barred. Count 7 of the TAC must likewise be dismissed for the same reasons, as it is inherently rooted in and derivative of the IUOE CBA and Count Six.

### POINT V

### PLAINTIFFS' NYLL ARTICLE 6 CLAIMS (FOURTH AND SEVENTH CLAIM FOR RELIEF) MUST BE DISMISSED AS A MATTER OF LAW BECAUSE PLAINTIFFS DO NOT SUFFICIENTLY ALLEGE A VIOLATION OF LAW

Plaintiffs' claims under NYLL Article 6 are wholly reliant upon the success of their other wage claims. Plaintiffs cannot demonstrate that they were not provided with proper wage

23

statements listing their gross wages, deductions, and net wages as asserted. (TAC, ¶ 184; see also TAC, ¶ 198). Plaintiffs' claims fail on the face of the Complaint, given the absence of any allegations that Plaintiffs did not receive regular pay stubs for each payroll. Assuming that Plaintiffs are solely alleging that they did not receive pay statements reflecting pay rates they never received (nor were entitled to under the CBAs), this claim must be dismissed as a matter of law. See Heredia v. Americare, Inc., No. 17 CIV. 06219 (RWL), 2020 WL 3961618, at *15 (S.D.N.Y. July 13, 2020)(granting summary judgment to defendants on wage notice and wage statement claims where plaintiffs solely alleged that they were not provided with same reflecting wage rate and overtime claims which were likewise dismissed). Plaintiff Cortese reiterates this theory in Count 6 on behalf of himself and the proposed IUOE class with respect to the alleged failure to pay irregular shift differentials. For the same reason, the alleged failure to document payments of pay rates not actually received cannot provide the basis of a claim under NYLL. Plaintiffs' paystubs and/or wage statements would be inaccurate if they reflected payments not actually received and, accordingly, this claim makes no logical or legal sense.  For the above reasons, Counts 4 and 7 must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants pray that this Court enter an order, pursuant to FRCP 12(b)(6), dismissing in their entirety, with prejudice, Plaintiffs' First, Second, Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief.

Dated:  New York, New York
        November 5, 2020

PECKAR & ABRAMSON, P.C.

By: */s/ Gregory R. Begg*
_____
Gregory R. Begg, Esq.
1325 Avenue of the Americas, 10th Floor
New York, NY 10019
 (212) 382-0909
*Attorneys for Defendants Skanska Koch, Inc. and Skanska Koch-Kiewit JV, Inc.*

25